

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-18-00005-CR

---

NOEMI ISABEL NORIA, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. 17-26260

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

After hearing evidence implicating Noemi Isabel Noria in the sexual assault of her young son, A.G.,[1] a Fannin County jury convicted her of continuous sexual assault of a young child.[2] Noria elected that punishment be assessed by the trial court, and, after a hearing, the trial court sentenced her to thirty years' imprisonment. On appeal, Noria challenges the sufficiency of the evidence supporting her conviction. Because we find that the evidence was sufficient to support her conviction, we will affirm the judgment of the trial court.

## I.    The Evidence at Trial

At trial, A.G.,[3] testified that he had been sexually assaulted three times by Sergio, who worked with Noria and his stepfather, Pedro. The first time occurred at his grandfather's house when A.G. was eight years old. A.G. testified that he was asleep in his mother's bedroom and that Noria, Pedro, and Sergio were outside of the house. He awoke when Sergio came in the room and locked the door. Sergio then pulled his and A.G.'s pants down, got in bed, and put his penis in A.G.'s anus.[4] When Sergio stopped, A.G.'s anus was wet and hurt. Afterward, A.G. took a shower and went outside to play.

The second time occurred at Noria's workplace, again when A.G. was eight years old. A.G. testified that Noria took his brothers, his sister, and him to Noria's workplace to take Pedro

---

[1]All persons who were minors at the time of the offenses referenced in this opinion will be referred to by their initials. *See* TEX. R. APP. P. 9.10.

[2]*See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp.2018).

[3]A.G. was born on February 9, 2006, and he was eleven years old when he testified.

[4]At the time of this assault, Sergio and Noria were both over seventeen years old.

his lunch.[5] While his brothers and sister played in the parking lot, A.G. accompanied Noria inside. After they went to Pedro's office and gave him his lunch, Pedro and Noria went outside and left A.G. in the office with Sergio. Sergio walked over to A.G., pulled his pants down, and again sexually assaulted him in the same way as before. Afterwards, Sergio left the office, and A.G. returned to the car, where Noria waited. A.G. also testified that, when he attempted to tell Noria about this assault, she ignored him.

A.G. testified that the third assault happened at Sergio's house when he was almost nine years old. On this occurrence, Noria took A.G. to Sergio's house. When they got there, Sergio's wife and children were there, and A.G. went to play with Sergio's sons in their room. After Pedro went to the bathroom, Pedro called for him and took him into a room where there was a rope and tape on a bed. Noria and Sergio were also in the room. Pedro tied him to the bed stretched out on his stomach, and Noria put duct tape over his mouth. Sergio then pulled his and A.G.'s pants down and put his penis in A.G.'s anus. When Sergio was through, Pedro untied him, and Sergio ripped the tape off of his mouth.

The first person that A.G. told about the assaults was his adult cousin, Leticia.[6] Leticia testified that A.G. and three of his siblings came to live with her in October 2015. Within a few months, A.G. told her about the three sexual assaults by Sergio and drew pictures of them.[7] Leticia's testimony regarding what A.G. told her was generally consistent with A.G.'s trial

[5]Other testimony showed that Noria worked the day shift and that Pedro and Sergio worked the night shift.

[6]A.G. also referred to Leticia as "Mercedes."

[7]Two of the drawings were introduced into evidence.

3

testimony. Some of the details varied from A.G.'s testimony, however. Regarding the assault at Sergio's house, Leticia testified that A.G. told her that Noria was asleep in Sergio's bed during the assault. Also, A.G. told her regarding the first assault that he had come home from school and Noria, Pedro, and Sergio were outside of the house. He went in to put his books away, and Sergio came in and told him to come with him, then assaulted him. After the outcry by A.G., Leticia notified the police and Child Protective Services.

Britney Martin, the executive director of the Grayson County Children's Advocacy Center, performed a forensic interview of A.G. on March 3, 2016. She testified that A.G. was scared and upset and that she observed him to have shame, embarrassment, and fear. Martin stated that A.G. had been interviewed twice before and that she had reviewed those interviews before she performed hers. A copy of her interview was introduced into evidence. Martin testified that A.G. told her about three incidents with one perpetrator and about two other occurrences with different perpetrators. He identified Sergio, Pedro, and A.G.'s brother, Nelson, as the perpetrators. She also testified that A.G. never told her that Noria was present during the assaults, that he was tied up, or that Noria duct taped him and participated in any assault.

In his forensic interview, A.G.'s descriptions of the first two assaults were generally consistent with his trial testimony. A.G. also told Martin that, after the first incident, Sergio told him that, if he told anyone, he would hurt him. A.G. maintained that he was seven or eight years old at the time of the first and second assaults and that he was eight and one-half years old at the time of the third assault. In his account of the third assault, A.G. maintained that only Sergio took

4

him into a room and assaulted him and that Pedro and Noria were outside with Sergio's wife at the time. A.G. also told Martin that Noria and Pedro did not know what was happening with Sergio.

Kelly Gilleland is a licensed professional counselor and licensed sex-offender treatment provider, and she works as a therapist at Pegasus School. She testified that she has seen A.G. two times a week in group therapy and two to three times a week in individual therapy since he was admitted in October 2016. Gilleland testified that A.G. began to make outcries against Pedro, Sergio, and two of his brothers about three to four months after he began the program. He also told her that Noria facilitated at least two of the assaults by Sergio. Gilleland also testified that A.G. filled out two forms which are provided clients when they want to make an outcry. The first form briefly alleges the three assaults by Sergio and states that Pedro participated. The second form concerns the assault that took place at Sergio's house and indicates that Noria and Pedro tied him to the bed and taped his mouth. Both forms indicate that the assaults happened when A.G. was nine years old.

## II. Standard of Review

In our determination of legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). In our rigorous review, we focus on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion,

and we defer to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In drawing reasonable inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). Further, since the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, it may "believe all of a witnesses' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). Finally, when the jury's decision is based on an evaluation of witness credibility, we give it almost complete deference. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

6

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

The State relied on Noria's liability as a party to Sergio's continuous sexual assault of A.G. "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (West 2011). A "person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011); *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013). In determining whether an appellant is a party to an offense, we may consider "events before, during, and after the commission of the offense." *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (quoting *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977)). We may consider circumstantial evidence and look to the actions of the defendant showing an understanding and common design to commit the offense. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (citing *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). However, a person's mere

7

presence at the scene of a crime, or his flight from the scene, without more, is not sufficient to sustain a conviction based on party liability. *Gross*, 380 S.W.3d at 186.

### III. Analysis

In this case, to obtain a conviction of Noria for continuous sexual assault of a young child under the indictment and the statutes, the State had to show beyond a reasonable doubt that Noria, (1) with intent to promote or assist Sergio in the commission of the offense, (2) aided or attempted to aid Sergio (3) to commit two or more acts of sexual abuse[8] (4) against A.G., (5) during a period that is thirty or more days in duration, (6) when Sergio was seventeen years of age or older and (7) when A.G. was younger than fourteen years of age. *See* TEX. PENAL CODE ANN. §§ 7.02(a)(2), 21.02(b).

In her legal sufficiency challenge, Noria challenges only the sufficiency of the evidence showing (1) that she was legally responsible for two or more acts of sexual abuse and (2) that there were two acts of sexual abuse during a period of thirty or more days in duration. Noria does not challenge the sufficiency of the evidence showing that Sergio committed the three acts of sexual abuse when he was seventeen years of age or older and A.G. was younger than fourteen years of age. In addition, Noria admits that there is sufficient evidence to support her liability as a party for the sexual abuse that occurred at Sergio's house. However, she argues that there is no evidence from which the jury could rationally conclude that she aided Sergio in the commission of either of the first two sexual assaults. Consequently, she argues, there is insufficient evidence showing she

---

[8] An "act of sexual abuse" includes, among other types, sexual assault and aggravated sexual assault. TEX. PENAL CODE ANN. § 21.02(c)(3)–(4) (West Supp. 2018).

is liable as a party for two or more acts of sexual abuse.  Noria also argues that, because it is not clear when the three assaults occurred, there is no evidence that they occurred over a period of thirty or more days.

**A.     Two or More Sexual Assaults Were Shown By Sufficient Evidence**

The evidence showed, when viewed in the light most favorable to the verdict, that, prior to the assault at Sergio's house, Noria took A.G. to Sergio's house without his brothers and sisters.  Once there, Noria actively participated as Pedro and she bound A.G. to the bed and duct taped his mouth to enable Sergio to sexually assault him without fear of discovery by Sergio's family.  Prior to the assault at Noria's workplace, Noria left the other children outside while A.G. accompanied her to Pedro's office.  Once there, she and Pedro left A.G. in the office alone with Sergio, and Noria apparently returned to her car, where A.G. found her after the assault.  Further, the evidence showed that Noria ignored A.G. when he attempted to tell her about the assault.

The jury could consider events before, during, and after the commission of the offense in its determination of whether Noria both intended to assist and assisted Sergio in the commission of the workplace assault.  *See Gross*, 380 S.W.3d at 186.  Therefore, the jury could consider that Noria's actions prior to and during the assault at Sergio's house, and her refusal to listen to A.G.'s outcry, would explain why Noria only took A.G. with her to the office, why she left him alone with Sergio, and why she returned to her car without first retrieving A.G.  Thus, a rational jury could reasonably conclude that Noria's actions before, during, and after the assault showed that she both intended to assist, and assisted, Sergio in his sexual assault on A.G. at Noria's workplace.

9

Therefore, we find that there was sufficient evidence supporting the jury's finding that A.G. was liable for at least two sexual assaults on A.G. Consequently, we overrule Noria's first issue.

**B.    The Required Time Period Was Shown by Sufficient Evidence**

At trial, A.G. testified that the assaults at his grandfather's house and at Noria's workplace took place when he was eight years old and that the assault at Sergio's house took place when he was almost nine years old. In his forensic interview, A.G. maintained that he was seven or eight when he was assaulted at his grandfather's house and at Noria's workplace and that he was eight and one-half when assaulted at Sergio's house. Noria argues that this inconsistency in A.G.'s statements and the uncertainty of the timing of the assaults would prevent any rational jury from concluding that the assaults took place during a period of thirty or more days. We disagree.

Under the statute, it is not required that the jury determine the exact dates that the acts of sexual abuse occurred. TEX. PENAL CODE ANN. § 21.02(d) (West Supp. 2018). However, they must agree that two or more acts of sexual abuse were committed during a period of time that was thirty or more days in duration. *Id.* When the testimony is inconsistent or conflicting, we defer to the jury to resolve any conflicts. *Hooper*, 214 S.W.3d at 13; *Smith v. State*, 397 S.W.3d 765, 769 (Tex. App.—San Antonio 2013, no pet.). Further, the testimony of a child victim, standing alone, is sufficient to support a conviction for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2018).

In this case, although A.G.'s trial testimony and forensic interview varied regarding how old he was at the time of each assault, his statements were consistent in indicating a significant time period between the assaults at his grandfather's house and at Noria's workplace and the

10

subsequent assault at Sergio's house. When he thought that the assaults at this grandfather's house and at Noria's workplace happened when he was seven or eight, he placed the subsequent assault to be when he was eight and one-half. Likewise, when he placed the first two assaults to be when he was eight, he believed the third assault to be when he was almost nine.

In light of these statements, the jury could reasonably infer that the first two assaults occurred at a time near A.G.'s eighth birthday and that the assault at Sergio's house occurred during the second half of A.G.'s eighth year, or near his ninth birthday. Thus, a rational jury could reasonably infer that two or more assaults occurred during a period that was thirty or more days in duration. Further, even if this evidence would also support an inference that the three assaults occurred in a time period of less than thirty days, we presume that the jury resolved these competing inferences in favor of its verdict, and we defer to that determination. *Winfrey v. State*, 393 S.W.3d 763, 774 (Tex. Crim. App. 2013).

Therefore, we find that sufficient evidence supported the jury finding that two or more acts of sexual abuse were committed in a period of time that was thirty or more days in duration. We overrule Noria's second issue.

11

For the reasons stated, we affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     October 8, 2018
Date Decided:       October 25, 2018

Do Not Publish